**LAMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Adam P. Wofse, Esq.
*Proposed Counsel for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                              Chapter 11
                                                                                          Case No. 23-44119 (ESS)
RISE DEVELOPMENT PARTNERS, LLC,

                                          Debtor.
-----------------------------------------------------------X

## MOTION OF THE DEBTOR FOR ENTRY OF AN INTERIM AND FINAL ORDER AUTHORIZING THE DEBTOR TO CONTINUE ITS CASH MANAGEMENT SYSTEM AND GRANTING RELATED RELIEF

Rise Development Partners, LLC ("Debtor"), the above-captioned debtor and debtor in possession, by and through its proposed counsel, LaMonica Herbst & Maniscalco, LLP, hereby submits this motion ("Motion"), pursuant to sections 105, 345 and 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for entry of an order authorizing, but not directing, the Debtor to (a) continue using its cash management system, and (b) temporarily maintain and continue to use its existing Bank Account (as defined herein). In support of the Motion, the Debtor respectfully represents as follows:

### INTRODUCTION

1.On November 10, 2023 ("Filing Date"), the Debtor filed a voluntary petition ("Petition") for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of New York (the "Court").

2.The Debtor has elected to file this case under Subchapter V of Chapter 11 of the Bankruptcy Code, the Small Business Debtor Reorganization Act.

3. A Subchapter V trustee has not yet been appointed.

4. The Debtor remains in possession of its property and continues to operate and manage its properties and affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. The Debtor is a privately owned limited liability company established in 2016, operating as a as a general contracting and construction company, primarily in the area of interior renovations and new construction. The Debtor's principal place of business is 444 Coney Island Avenue, Brooklyn, New York 11218.

6. Shortly after the filing of its Petition, the Debtor filed the Declaration of Lawrence Rafalovich, pursuant to Local Bankruptcy Rule 1007-4 ("Rafalovich Declaration"). A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this Chapter 11 case, is more fully set forth in the Rafalovich Declaration, which is incorporated herein by reference.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief sought herein are Bankruptcy Code sections 105, 363, 1107 and 1108 and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A. Brief Description of the Debtor's Cash Management System and Bank Account**

10. Prior to the Filing Date, in the ordinary course of the Debtor's business, the Debtor maintained a cash management system comprised of an operating checking account held by the Debtor at J.P. Morgan Chase Bank, with account number ending *9755 ("Bank Account" or "Cash Management System"). The Cash Management System enables the Debtor to manage and control corporate funds and ensure cash availability.

## RELIEF REQUESTED AND BASIS FOR RELIEF

11. By this Motion, the Debtor seeks entry of an order, pursuant to Bankruptcy Code sections 105(a), 345, and 363 and Bankruptcy Rules 6003 and 6004, authorizing the Debtor to (i) continue its Cash Management System in the ordinary course of business, consistent with its pre-petition practices, and (ii) temporarily maintain its existing Bank Account, until such time as the account is converted to a DIP account or a new DIP account is opened (with all transfers to the DIP account having occurred and then the Debtor will close the prior account).

12. On a monthly basis, electronic transfers and checks ranging from tens to hundreds of thousands of dollars are received from owners and/or customers of the Debtor in connection with projects on which the Debtor works. A multitude of such electronic transfers and checks are already, or imminently will be, in process, and thus a sufficient waiting period is required before a change to another deposit account may be prudently effectuated.

13. Moreover, the Debtor currently has three (3) open construction projects, all of which are located in New York. As a contractor performing work on construction projects that are subject to the provisions of the New York Lien Law, including the trust fund accounting provisions set forth in Article 3-A of the New York Lien Law ("Article 3-A"), the Debtor is required to maintain a full accounting in its books and records of the cash receipts and disbursements on each

of its open construction projects to demonstrate the allocation of trust funds received. Article 3-A does not require separate bank accounts for each construction project, provided that the use of trust funds is properly recorded in the Debtor's books and records. N.Y. LIEN LAW § 75. The Debtor uses the QuickBooks software accounting system to create one central, single source of accounting and project information that provides a full and accurate accounting of all cash receipts and disbursements on each of its open projects and demonstrates the allocation of all trust funds received by the Debtor. Accordingly, Debtor's current books and records and related accounting system complies with the provisions of Article 3-A of the Lien Law.

14. The Debtor submits that the relief requested herein is a reasonable exercise of its business judgment and will help ensure the Debtor's orderly entry into chapter 11 and avoid the possible disruptions to its operations during the critical early days of this chapter 11 case.

### A. The Debtor Should Be Authorized to Continue to Use the Cash Management System Under Section 363 of the Bankruptcy Code

15. The Debtor requests authority to continue to use its Cash Management System in order to avoid disruption to its business operations and preserve its going concern value. The Cash Management System constitutes a customary and essential business practice for the Debtor. It allows the Debtor to track all cash payments, control and monitor company funds and ensure cash availability. Requiring the Debtor to immediately close its Bank Account and establish a new system of account(s) would be unduly burdensome with little corresponding benefit since, among other things, such an exercise would be (a) costly, (b) disrupt the Debtor's ability to satisfy post-petition payables in a timely manner, potentially causing a loss of trade credit and customer and employee confidence, and (c) interfere with the efficient management of the Debtor's resources and its ongoing operations. Accordingly, the Debtor respectfully requests that the Court temporarily authorize the Debtor's continued use of the Cash Management System described and

as set forth herein, until such time as the account is converted to a DIP account or to open a new DIP account and then close-out the current account after all transfers have been made.

16. The Debtor further requests that J.P. Morgan Chase Bank - the bank where the Debtor holds its Bank Account, be authorized to (a) continue to administer the Bank Account in the manner maintained prior to the Filing Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Account by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Filing Date, or (ii) prior to the Filing Date, for the payment of any and all amounts approved by this Court.

17. Bankruptcy Code section 363(c)(1) authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in its day-to-day transactions without incurring excessive monitoring costs that would result from the need to provide notice of, and obtain approval for, ordinary course activities. See, e.g., Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997). The Debtor's ability to continue using the Cash Management System and engage in related routine transactions falls within the parameters of Bankruptcy Code section 363(c)(1). See Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp., Inc.), 75 F.3d 1447, 1453 (10th Cir. 1996); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with Bankruptcy Code section 363(c)(1)).

18. To the extent that continuing to use the Cash Management System is beyond the ordinary course of the Debtor's business, the Debtor submits that such use is permitted by Bankruptcy Code sections 363(b)(1) and 105(a). Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b). Courts generally hold that a debtor's decision to enter into a transaction outside the ordinary course of business is governed by the business judgment standard. See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Further, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19. The Debtor further submits that continued use of its Cash Management System is consistent with its obligations under Article 3-A of the Lien Law and requests that this Court authorize the Debtor to continue its Cash Management System in the manner that it has been operated pre-petition, in compliance with Article 3-A of the Lien Law and without the need for separate bank accounts for each of the Debtor's remaining projects. As a part of its Cash Management System, the Debtor maintains one (1) Bank Account. This account serves various functions in connection with the Debtor's construction operations, and the Debtor's books and records account for the cash receipts and clearly record all expenditures on each of its construction projects in accordance with the requirements of Article 3-A of the Lien Law.

20. The Debtor does not maintain separate bank accounts for each construction project because it is not required to do so under Article 3-A and, moreover, given the number of open and active construction projects, maintaining separate bank accounts would impose an extreme

administrative burden on the Debtor's accounting staff without any corresponding benefit to the estate.

21. Under Article 3-A, when a contractor/trustee such as the Debtor deposits the funds received on a construction project into a bank, "the trustee *shall not* be required to keep in separate bank accounts or deposits the funds" over which he or she is trustee. N. Y. LIEN LAW § 75(1). The New York Court of Appeals has stated, "the contractor-trustee is privileged to commingle funds," Aquilino v. U.S., 10 N.Y.2d 271, 280 1961), and "the privilege of the trustee to commingle funds 'is considerably mitigated by the elaborate provisions found in the statute for accounting for trust proceeds and expenditures . . . .'" Raisler Corp. v. Uris 55 Water St. Co., 397 N.Y.S.2d 668, 672 (N.Y. Sup. Ct. 1977) (quoting Aquilino, 10 N.Y.2d at 281). The Lien Law requires that contractor/trustees maintain detailed bookkeeping regarding allocation of trust assets for each trust. N. Y. LIEN LAW § 75.

22. New York bankruptcy courts have repeatedly upheld the state court's rulings that funds received by contractor/trustees need not be held in separate bank accounts so long as the funds are properly applied first to the payment of Lien Law beneficiaries including suppliers, laborers and materialmen. In re Jandous Elec. Constr. Corp., 115 B.R. 46, 52 (Bankr. S.D.N.Y. 1990) (citing Aquilino); see also Mendelsohn v. Roalef (In re E.D.B. Constr. Corp.), Adv. Proc. No. 13-8021-reg, 2013 WL 6183849, at *3 (Bankr. E.D.N.Y. Nov. 26, 2013) ("The trustee is not required to keep the funds of the trusts in separate bank accounts; however the trustee must keep books or records for each trust and if the funds are commingled, keep a record of the account showing the allocation to each trust of the deposits and withdrawals therefrom.").

23. Accordingly, the Debtor's request to maintain its existing Cash Management System as described herein is a reasonable exercise of its business judgment.

24. The U.S. Trustee Guidelines, which were adopted in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases, require chapter 11 debtors to, among other things: (a) close all existing bank accounts; (b) open a new debtor-in-possession operating account at certain financial institutions designated as authorized depositories by the U.S. Trustee; and (c) obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" or "DIP" and contain certain other information relating to the chapter 11 case.

25. Strict, immediate enforcement of the U.S. Trustee Guidelines in this chapter 11 case would disrupt the Debtor's ordinary business operations and cause unnecessary concern among its remaining employees, vendors, and customers, thereby reducing efficiency and causing avoidable expense. Here, the Debtor's continued use of the Bank Account is critical to its smooth and orderly transition into chapter 11, until such time as the Bank Account can be converted to a DIP account, or closed with a new DIP account having been opened and all transfers having been successfully transitioned between accounts so as to fully protect the Debtor's estate and creditors.

26. The Bank Account is held at J.P. Morgan Chase Bank, which is designated as an authorized depository by the U.S. Trustee. As soon as practicable, the Debtor will seek to convert and/or transition the Bank Account into a DIP account. To the extent the Debtor is unable to convert and/or transition the Bank Account into a DIP account at J.P. Morgan Chase Bank, the Debtor will, as soon as practicable, close the Bank Account and open a new DIP account at an authorized depository.

27. To ensure that the maintenance of the Cash Management System does not prejudice any parties in interest, the Debtor will separately record the balances of the Bank Account as of the Filing Date and track post-petition activity by documenting any post-petition transactions in

8

the Debtor's books and records. These transactions will also be incorporated into the monthly operating reports that will be filed with the Court during the pendency of this chapter 11 case. In addition, the Debtor will designate the Bank Account as a debtor in possession account in its books and records, and on checks with the affected financial institution.

28. Finally, in the ordinary course of business, the Debtor uses a variety of checks and other business forms, including purchase orders, invoices, correspondence and contracts (collectively, "Business Forms"). By virtue of the nature and scope of the Debtor's business, and the numerous suppliers of goods and services and other parties with whom the Debtor conducts business, it is imperative that the Debtor be permitted to continue to use the Business Forms subject to the notation of a debtor in possession designation without other alteration or change. The Debtor has the capability to affix the "debtor in possession" designation on its Business Forms which are created by computer. Except as set forth herein, the Debtor submits that changing its Business Forms would be unnecessary and burdensome to the estate, as well as expensive and disruptive to ongoing business operations.

29. Accordingly, the Debtor requests that this Court authorize the Debtor to maintain its Cash Management System relating to its Bank Account and Business Forms as set forth herein. The Debtor submits that the proposed course of action described above will satisfy the purposes of the U.S. Trustee Operating Guidelines without unnecessary disruption to the estate. All parties in interest in the case will be best served by the relief requested herein because it will minimize disruption to the Debtor's business operations.

## REQUEST FOR WAIVER OF STAY

30. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale,

or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, maintenance of the Debtor's Cash Management System and continued access to its Bank Account is essential to prevent irreparable damage to the Debtor's operations and value. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## **NOTICE AND NEED FOR EXPEDITED RELIEF**

31.     The Debtor intends to serve a copy of this Motion with exhibits as set forth by Order of the Court. It is respectfully submitted that pursuant to Bankruptcy Code section 102(1) and Bankruptcy Rules 9006, 9007, 9013, and 9014, service in this manner constitutes adequate and sufficient notice of the relief requested herein.

32.     The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve the relief described in this Motion.

33.     No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests entry of the Order annexed hereto granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: November 10, 2023
      Wantagh, New York      **L<small>A</small>M<small>ONICA</small> H<small>ERBST</small> & M<small>ANISCALCO</small>, LLP**
*Proposed Counsel for the Debtor and Debtor-in-Possession*

By: */s/ Adam P. Wofse*
     Adam P. Wofse, Esq.
     3305 Jerusalem Avenue, Suite 201
     Wantagh, New York 11793
     Telephone: (516) 826-6500