**LaMonica Herbst & Maniscalco, LLP**
*Counsel for the Debtor and Debtor in Possession*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500
Adam P. Wofse, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                                                  Chapter 11 (Subchapter V)

RISE DEVELOPMENT PARTNERS, LLC,                Case No. 23-44119 (ESS)

                                    Debtor.
---------------------------------------------------------x

## AMENDED PLAN OF LIQUIDATION FOR
## SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11

Rise Development Partners, LLC, the debtor and debtor in possession herein (the "Debtor"), hereby proposes the following Amended Plan of Liquidation for Small Business Under Subchapter V of Chapter 11 (the "Plan").

### BACKGROUND[1]

### A. Description and History of the Debtor's Business

The Debtor is a New York limited liability company which was established in 2016. The Debtor began operations in 2017 and operates as a general contracting and commercial and residential construction company, primarily in the area of interior renovations and new construction. The Debtor operates its business at 444 Coney Island Avenue, Brooklyn, New York 11218. The Debtor is operated by Lawrence Rafalovich, President. Lawrence Rafalovich owns 99% of the outstanding shares of the Debtor and Sabina Rafalovich owns 1%.

The Debtor's Chapter 11 filing was precipitated by, among other things, the financial distress caused by and following the separation with a former partner, Barry Caldwell ("Caldwell"). Lawrence Rafalovich partnered with Caldwell to establish another company known as Rise Concrete LLC ("Rise Concrete") and Caldwell simultaneously became a part-owner of the Debtor. Given Caldwell's expertise in concrete structure, forming this relationship would allow the Debtor to handle this critical aspect of construction in-house. With respect to certain Rise Concrete contracts, however, Caldwell improperly named the Debtor as a party to such contracts.

---

[1] This Plan is for a small business debtor under Subchapter V of Chapter 11 of the Bankruptcy Code. Section 1190 of the Bankruptcy Code requires that such a plan include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The information in this section of this Plan is provided for that purpose.

The Debtor did not have the ability to perform under those Rise Concrete contracts. In or about June 2022, Caldwell abruptly left the business without notice. Caldwell had abandoned all Rise Concrete projects, without paying vendors and subcontractors for those projects. Those vendors and subcontractors then turned to the Debtor seeking payment. As a result, multiple lawsuits were commenced against the Debtor for obligations incurred as a result of Caldwell's failure to complete the projects of Rise Concrete. Such litigation had caused the Debtor significant and irreparable financial distress.

With the breathing spell and powers and protections afforded by and under the Bankruptcy Code, the Debtor elected to file this Chapter 11 case, on November 10, 2023 (the "Filing Date") in order to reorganize its financial affairs, and presently proposes this liquidating Plan to make distributions to creditors. The Debtor currently has three (3) remaining construction projects to complete.

### B. Liquidation Analysis

To confirm this Plan, the Court must find that all creditors who do not accept this Plan will receive at least as much under this Plan as such claim holder would receive in a chapter 7 liquidation. For purposes of demonstrating this requirement, the Debtor has prepared a liquidation analysis attached hereto as *Exhibit "A"*.

### C. Ability to Make Future Plan Payments and Without Further Reorganization

The Debtor must also show under the Plan that the Debtor will have sufficient funds to make the required Plan payments. For purposes of demonstrating this requirement, the Debtor has prepared projected financial information concerning its orderly liquidation attached hereto as *Exhibit "B"*, which reflects that the Debtor will make distributions to Allowed claimants in accordance with the priorities of the Bankruptcy Code. Because this is a liquidating plan, no future or further reorganization would be likely or possible.

## ARTICLE I

## **SUMMARY**

The Plan proposes to pay creditors of the Debtor from funds generated by the Debtor's wind-down of operations and liquidation in accordance with the priorities of the Bankruptcy Code.

The Plan provides for:   One (1) class of construction trust fund claims;
Two (2) classes of secured claims;
One (1) class of general unsecured claims.

Administrative and Priority Tax Claims are also provided for under the Plan.

All creditors should refer to Articles III through VI of the Plan for information regarding the precise treatment of their claim.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTEREST

2.01    Class 1 Claims – Construction Trust Fund Claims

Class 1 Claims consist of the Allowed Construction Trust Fund Claims of unpaid subcontractors, suppliers and/or materialmen exclusively in relation to particular construction project(s) of the Debtor on which such claimants worked.

2.02    Class 2 Claim – U.S. Small Business Administration Secured Claim

The Class 2 Claim consists of the Allowed Secured Claim of the U.S. Business Administration ("SBA").

2.03    Class 3 Claims – Vehicle and Equipment Secured Claims

The Class 3 Claims consist of the Allowed Secured Claims of John Deere Fin., Rolls Royce Motor Cars, and TD Bank, N.A.

2.04    Class 4 Claims – General Unsecured Claims

Class 4 Claims consist of the Allowed General Unsecured Claims filed against the Debtor's estate.

2.05    Class 5 Interests – Shareholder Interests

The Class 5 Interests consist of the shares of the Debtor.

# ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND COURT FEES

3.01    *Unclassified Claims* – Pursuant to § 1123 of the Bankruptcy Code, statutory fees, administrative expense claims and priority tax claims are not classified.

3.02    *Administrative Expense Claims* - Each holder of an administrative expense claim Allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Professional fees and fees of the subchapter V Trustee continue to accrue and are subject to Court order. The Administrative Claims (approx.) are as follows:

| Name | Title | Amount |
|---|---|---|
| LaMonica Herbst & Maniscalco, LLP | Counsel to the Debtor | Fees: $121,382.50<br>Expenses: $4,021.47 |
| Peter Kutner, CPA | Accountants for the Debtor | Fees: $1,080.00 |
| Heidi J. Sorvino, Esq. | Sub-Chapter V Trustee | Fees: $9,455.00 |

3.03    *Priority Tax Claims* – Each holder of a priority tax claim Allowed under § 507(a)(8) of the Bankruptcy Code will be paid in full on the Effective Date, in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Priority tax claims consist of claims owed to the NYS Department of Tax and Finance and the NYS Department of Labor, in the approximate aggregate amount of $1,030.  A priority claim has been filed by the IRS in the amount of $2,538.99 for an estimated payroll tax obligation[2].

3.04    *Statutory Fees* – All fees and charges required to paid under 28 U.S.C. § 1930, including any applicable interest, shall be fully paid.  Such fees and charges that are due on or prior to the Effective Date of the Plan, shall be paid on the Effective Date.  Such fees, together with any applicable interest thereon, that may become due after the Effective Date of the Plan shall be paid as they become due by the Confirmed Debtor until this case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under the Plan:

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
| Class 1 – Construction Trust Fund Claims | Unimpaired | Variable in the ordinary course of the Debtor's ongoing construction projects | Class 1 consists of the Allowed Construction Trust Fund Claims of unpaid subcontractors, suppliers and/or materialmen exclusively in relation to particular construction project(s) of the Debtor on which such claimants worked.<br><br>Upon the Effective Date, the legal, equitable and contractual rights of a holder of an Allowed Class 1 Claim will be reinstated and paid, from and after the Effective Date, in the ordinary course of business, without acceleration, in accordance with applicable non-bankruptcy law and such agreements and terms as existed as of the Filing Date, which agreements will |

---

[2] The estimated priority claim filed by the IRS will either be paid in full on the Effective Date, resolved consensually or objected to in accordance with the provisions of this Plan.  The Debtor believes that no priority tax liability should be owed to the IRS as the Debtor's payroll taxes are impounded and paid by the payroll provider.

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
|  |  |  | continue in full force and effect, except as otherwise agreed. Class 1 Claims will be paid solely from proceeds received from the particular construction project of the Debtor on which such claimants worked. To the extent the proceeds from any construction project are insufficient to pay all Class 1 Claims with respect to such project, any unpaid Class 1 Claim with respect to such project shall (a) be deemed to be a General Unsecured Claim and reclassified as such, (b) become impaired, and (c) be paid, to such extent, in accordance with the distribution to Class 4 Claimants.<br>Class 1 Claims are unimpaired, and therefore the holders of Class 1 Claims are deemed to have voted to accept the Plan. |
| Class 2 – Secured Claim of SBA | Impaired | $162,977.50 | Class 2 consists of the Allowed Secured Claim of the SBA. Upon and after the Effective Date, the Allowed Secured Claim of the SBA shall be paid in full as soon as practicable after receipt of funds by the Debtor from its remaining construction projects[3], and after payment in full of all Allowed Class 1 Claims. The SBA will retain its lien(s) until the Plan payment(s) is/are paid.  The foregoing is subject to the carve out set forth in the Order of the Court dated March 13, 2024 [ECF No. 72] in the event the Debtor's estate has insufficient funds to pay Class 2 Claims and Administrative Claims in full.<br><br>The Class 2 Claim is impaired, and therefore the holder of the Class 2 Claim is entitled to vote to accept or reject the Plan. |

---

[3] Funds of the Debtor may also include a refund from the IRS in the approximate amount of $9,500 which was recouped by the IRS from Employee Retention Credits (ERC credits) due to the Debtor based upon an assessed IRS penalty.  The Debtor has requested a waiver of the penalty.  However, the probability of the waiver of such penalty and return of such funds to the Debtor from the IRS is likely 10% or lower.  Accordingly, based upon the foregoing, if the Debtor receives the refund then such funds will be further distributed in accordance with this Plan and the priorities under the Bankruptcy Code; conversely, if the refund is not received, no additional distribution will be made.

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
| Class 3 – Secured Vehicle and Equipment Claims | Unimpaired | Market value of collateral and/or as stated in respective timely filed proof of claim, subject to lien(s). | Class 3 consists of the Allowed Secured Claims of Vehicle and Equipment Claimants. Upon or as soon as practicable following the Effective Date the creditors with Allowed Vehicle and Equipment Secured Claims shall receive a return of their collateral[4], in full satisfaction of each such holder's Allowed Secured Claim. In the event of any deficiency claim, each such creditor shall file a proof of claim in accordance with Section 6.02 of this Plan, and such deficiency claim shall be treated in accordance with Class 4 Claims as a General Unsecured Claim.<br><br>Class 3 Claims are unimpaired, and therefore the holders of the Class 3 Claims are deemed to have voted to accept the Plan. |
| Class 4 – General Unsecured Claims | Impaired | $2,486,953 | Upon the Effective Date, or as soon as reasonably practicable after receipt of the funds from the Debtor's remaining construction projects[5], and after all objections to Class 4 Claims have been resolved and/or adjudicated by the Bankruptcy Court, in full satisfaction of its Allowed General Unsecured Claim, each holder of an Allowed Class 4 Claim shall receive a distribution on account of its Allowed General Unsecured Claim in the amount of its Pro Rata share of such funds, after payment in full of Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Administrative Expense Claims and Allowed Priority Tax Claims, except as otherwise agreed with the holder of such Claims, as set forth in *Exhibit "B"*[6].<br><br>The aggregate sum of funds after payment of the higher classes of Claims available for Pro Rata distribution to Allowed Class 4 Claims is approximately $14,000, as set forth in Exhibit B (expressly subject to footnote 6 below).<br><br>Class 4 Claims are impaired, and therefore holders of Class 4 Claims are entitled to vote to accept or reject the Plan. |

---

[4] Except with respect to the indicated Rolls Royce vehicle, which shall be retained (no equity in the vehicle), and the Debtor's principal, Lawrence Rafalovich, has been and will continue paying all remaining payments.

[5] There is a small possibility that the approx. sum of $9,500 may be received by the Debtor's estate from an ERC credit; see prior footnote 3.

[6] The total funds available for and Pro Rata distributions to Class 4 Claims may vary as they are dependent upon (a) final Allowed Claims that are higher in priority than Class 4 (including Administrative Expense Claims and any reserves for additional post-confirmation administrative costs and fees), (b) any additional funds that are received by

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
| Class 5 – Interests | Impaired | N/A | Upon the Effective Date, the Interests of the Debtor shall be cancelled. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 5 Interests are deemed to have rejected the Plan. |

# ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 *Objections to Claims*. The Debtor may continue to prosecute any objection to any claim filed prior to confirmation of the Plan after the Effective Date. Any Claim subject to an objection which has not been adjudicated by Final Order or otherwise resolved prior to Confirmation will be treated as a Disputed Claim under the Plan. Any further objections to Claims shall be filed by the Debtor no later than ninety (90) days after the Effective Date, which deadline may be extended by the Court upon application or motion of the Debtor without notice filed prior to the deadline. In the event that any proof of claim is filed, asserted or amended after the Effective Date, the Debtor shall have ninety (90) days from the date of such filing or notice to object to such claim, which deadline may be extended by the Court upon application or motion of the Debtor without notice made prior to the deadline. All objections shall be litigated (or settled) to Final Order. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all objections to claims whether filed prior to or after the Effective Date.

5.02 *Disputed Claim Reserve*. On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more accounts (either an attorney escrow account or a segregated account with a banking institution that is a depository authorized by the United States Trustee for bankruptcy cases in the Eastern District of New York), cash equal to 100% of the cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as administrative expenses or as priority claims pursuant to §§ 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax and (iii) any amount due but not payable on the Effective Date on account of administrative expenses or claims entitled to priority pursuant to §§ 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such cash. Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto. Within fourteen (14) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim; provided however, to the extent applicable and subject to the Class 4 Claims treatment above which provides for all claims objections having been resolved and/or adjudicated by the Bankruptcy Court.

---

the Debtor's estate as set forth in footnote 3, and (c) claim objections.

7

# ARTICLE VI

## PROVISIONS FOR (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) DEFICIENCY CLAIMS

6.01    Except as set forth in this Plan, all executory contracts or unexpired leases to which the Debtor is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be deemed rejected under the Plan as of the Effective Date in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code. The Debtor intends to assume or reject the specific executory contracts and/or unexpired leases as set forth in *Exhibit "C"*.

6.02    *Claims Based on Rejection of (a) Executory Contracts or Unexpired Leases, or (b) Class 3 Deficiency Claims.* All proofs of claim with respect to any Claims arising from (a) the rejection of executory contracts or unexpired leases, or (b) Class 3 deficiency claims must be filed with the Bankruptcy Court within thirty (30) days after the date of the order confirming this Plan. The failure of any such counterparty or claimant to file a proof of claim within the period prescribed shall forever bar it from asserting against the Debtor or its estate any claim for damages arising from (a) the rejection of its executory contract or unexpired lease with the Debtor, or (b) a deficiency claim relating to Class 3. The filing of any such proof of claim shall be without prejudice to any and all rights that the Debtor may have to object to the allowance thereof on any and all available grounds.

# ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    *Funding of Plan*. The distributions that are to be made on and/or after the Effective Date under this Plan shall be funded by the Debtor from the funds received from its three (3) remaining construction projects[7]. In the event the Court approves this liquidating Plan as a consensual Plan, the Confirmed Debtor shall be the Disbursing Agent responsible for making any and all post-Confirmation payments that are required under the Plan. In the event this Plan is approved via nonconsensual cramdown, the Debtor requests that the Court approve the Debtor as the Disbursing Agent under the Plan.

# ARTICLE VIII

## DEFAULT PROVISIONS

8.01    With respect to all creditors, in the event the Debtor fails to make any payments required under the Plan, upon written receipt from any creditor of a notice of such default, the Debtor will have 30 days from receipt of such notice to cure such default and during such 30-day period, such creditor shall take no action with respect to the Plan or the Debtor. If such default is cured within the 30-day period, then the Plan will continue in full force and effect. Notice of any such default must be sent to the Debtor by certified mail, return receipt requested to the following

---

[7] Subject to footnote 3 concerning the potential (although unlikely) additional source of funds for distributions.

addresses: LaMonica Herbst & Maniscalco, LLP, counsel for the Debtor, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 Attn: Adam P. Wofse, Esq.; and Lawrence Rafalovich, Rise Development Partners, LLC, 444 Coney Island Avenue, Brooklyn, New York 11218.

      8.02    In the event the default is noticed and not cured in accordance with this Article VIII, as applicable, the remedies for any such creditor include, without limitation, seeking (a) enforcement of the Plan in the Bankruptcy Court, (b) the liquidation of the Debtor's nonexempt assets, and/or (c) such remedies available under applicable state law.

## ARTICLE IX

## GENERAL PROVISIONS

      9.01    *Definitions and Rules of Construction.* The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

      (i)    "Allowed" or "Allowed Claim" means any Claim or Interest against the Debtor that is scheduled by or on behalf of the Debtor as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Bankruptcy Court and, in either case, a Claim (a) as to which no objection has been interposed within ninety (90) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Bankruptcy Court.

      (ii)    "Bankruptcy Code" means title 11 of the United States Code (11 U. S.C. §§ 1101, *et seq.*).

      (iii)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during the Debtor's chapter 11 case.

      (iv)    "Claim" means any right to payment from the Debtor and/or any or all of the Released Parties arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date of this Plan, and based upon, concerning, relating to, or in any manner arising from, in whole or in part, the Debtor and/or the Debtor's operations, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. FOR THE AVOIDANCE OF DOUBT, "CLAIM" SHALL SPECIFICALLY AND EXPRESSLY INCLUDE ALL CLAIMS UNDER FEDERAL, STATE AND/OR LOCAL LAW OR REGULATION.

      (v)      "Confirmed Debtor" means the Debtor in its post-Confirmation Order state.

      (vi)      "Disputed Claim" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim, or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

      (vii)      "Debtor's Professionals" or "Professionals" means such attorneys, accountants and/or other professionals employed by the Debtor in connection with this case.

      (viii)      "Disbursing Agent" means the Confirmed Debtor.

      (ix)      "Effective Date" means the first business day following the date that is fourteen (14) days after the entry of the order confirming this Plan. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

      (x)      "Final Order" means an order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

      (xi)      "Pro Rata Distribution(s)" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

      9.02      *Authority to Effectuate Plan*. Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

      9.03      *Revesting of Assets*. Consistent with §§ 1123(a)(5)(A) and 1141 of the Bankruptcy Code, and except as may be otherwise provided in this Plan, title to all assets and property of the estate of the Debtor shall pass to, and vest in, the Confirmed Debtor free and clear of all Claims, Liens, charges and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Confirmed Debtor may conduct its financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in this Plan or in the Confirmation Order. Any distribution check that is issued by the Debtor but not deposited within one hundred twenty (120) days after its distribution will be deemed abandoned by such creditor and shall otherwise be distributed in accordance with this Plan and the priorities under the Bankruptcy Code.

Notwithstanding any provision to the contrary herein, no distribution(s) shall be made to any creditor on account of an Allowed Claim if such distribution is $50.00 or less.

9.04   *Retention of Jurisdiction.* Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> (a)   To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;
>
> (b)   To hear and determine:
>
>> (i)   all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;
>>
>> (ii)   all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;
>>
>> (iii)   all rights, claims or Causes of Action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;
>>
>> (iv)   applications for allowance of compensation and expense reimbursement of the Debtor's Professionals, and the Subchapter V Trustee, for periods prior to the Effective Date;
>>
>> (v)   any and all applications, adversary proceedings and litigated matters;
>>
>> (vi)   to enter a final decree closing the Chapter 11 Case; and
>>
>> (vii)   to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

9.05   *Headings.* Headings are used in the Plan for convenience of reference only and shall not constitute a part of the Plan for any other purpose.

9.06     *Revocation*. The Debtor shall have the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Plan is revoked or withdrawn, it shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor, or any other entity, or to prejudice in any manner, the rights of the Debtor or any entity in any further proceeding involving the Debtor.

9.07     *Successors and Assigns*.  The rights, benefits and obligations named or referred to in the Plan shall be binding on, and shall inure to the benefit of the Debtor and all holders of Claims and Interests, their respective successors and assigns. The provisions of all documents executed under or in connection with this Plan shall be valid and enforceable and binding upon and inure to the benefit of the Debtor and all other parties thereto and their respective predecessors, successors, assigns, agents, officers and directors.

9.08     *Governing Law*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plan and, unless otherwise stated therein, any agreements, documents, and instruments executed in connection with the Plan.

9.09     *Saturday, Sunday or Legal Holiday*.  If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

9.10     *Enforceability*. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

9.11     *Plan Controls*. To the extent, the Plan is inconsistent with the Order confirming the Plan, the provisions of the Order shall be controlling.

9.12     *Reservation of Rights*. Neither the filing of the Plan nor any statement or provision contained therein shall be or be deemed to be an admission against interest.  In the event that the Effective Date shall not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the Chapter 11 Case.

9.13     *Substantial Consummation*.  The Plan will be deemed substantially consummated, as such terms is used in § 1101(2) of the Bankruptcy Code, upon the commencement of distributions to the holder of any Class of Claims under the Plan.  Following such substantial consummation, any appeal, rehearing or other post-confirmation motion of any nature with respect to the Plan or the Confirmation Order except as specifically provided herein or therein shall be rendered moot and no longer justiciable.

9.14    *Final Decree*.  The Debtor will file, on notice to the United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy Rule 3022, without prejudice to the Court's ability to reduce or extend the time to file such application.

9.15    *Dissolution.*    Within thirty (30) days after its completion of the acts required by the Plan (and all distributions under the Plan required to be made by the Disbursing Agent have been made), or as soon thereafter as practicable, the Disbursing Agent and/or the Confirmed Debtor shall file a certificate of dissolution for the Debtor, together with all other necessary company documentation, to effect its dissolution under the applicable laws of the State of New York.

## ARTICLE X

## INJUNCTION; LIMITATION OF LIABILITY

10.01    *Continuation of Stays*.  All stays provided for in the Chapter 11 Case under § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the completion of all payments required under the Plan.

10.02    *Injunction.*  Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtor or its assets are enjoined from taking any of the following actions against or affecting the Debtor or the assets of the Debtor with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the assets of the Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor or its assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor or its assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

10.03    *Limitation of Liability*.  The Debtor and its Professionals shall have or incur no liability to the extent allowed under § 1125(e) of the Bankruptcy Code and, in all respects, the Debtor and its Professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the Professionals of the Debtor for malpractice to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, *ultra vires* acts, gross mismanagement, or willful misconduct,  Additionally, the Plan shall not release or exculpate any person or entity from any Claim or Cause of Action existing as of the Effective Date (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter

amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

## ARTICLE XI

## **CONFIRMATION REQUEST**

11.01    The Debtor hereby requests Confirmation of the Plan pursuant to §§ 1129 and 1191 of the Bankruptcy Code.

Dated:  Brooklyn, New York
           March 26, 2024

                                         Respectfully submitted,

                                         RISE DEVELOPMENT PARTNERS, LLC

                                  By:    */s/ Lawrence Rafalovich*
                                           Lawrence Rafalovich

**READ AND APPROVED:**

    **LaMonica Herbst & Maniscalco, LLP**
    Counsel to the Debtor


By:    */s/ Adam P. Wofse*
        Adam P. Wofse, Esq.
        3305 Jerusalem Avenue
        Wantagh, New York 11793
        (516) 826-6500

# EXHIBIT A

**RISE DEVELOPMENT PARTNERS LLC**
**Chapter 7 Liquidation Analysis**

| ASSETS | Book Value as of 1/25/24 | Liquidation Value | Projected Liquidation Value |
|---|---:|---:|---:|
| Cash bank accounts | $10,456 | 100% | $10,456 |
| Accounts Receivable | $939,593 | 25% | $234,898 |
| Used Tools | $2,500 | 100% | $2,500 |
| Used Van and Trailer | $7,500 | 100% | $7,500 |
| WIP | $4,587,572 | 0% | $0 |
| | | | **$255,354** |

| LIABILITIES | | Expected Distribution |
|---|---:|---:|
| Allowed Secured Claims | ($162,978) | ($162,978) |
| Allowed Administrative Claims (Professionals) | ($141,656) | ($92,376) |
| Allowed Priority Tax Claims | ($1,030) * | $0 |
| | **($305,664)** | **($255,354)** |

| **Available to Pay Additional Claims** | **$0** |
|---|---:|

Note

Funds of the Debtor may include a refund from the IRS in the approximate amount of $9,500 which was recouped by the IRS from Employee Retention Credits (ERC credits) due to the Debtor based upon an assessed IRS penalty. Significantly, the probability of the waiver of such penalty and return of such funds to the Debtor from the IRS is likely 10% or lower. Therefore, based upon the foregoing, if the Debtor receives the refund then such funds will be further distributed in accordance with this Plan and the priorities under the Bankruptcy Code; conversely, if the refund is not received, no additional distribution will be made.

* Excludes disputed priority tax claim of the IRS in the amount of $2,538.99.

# EXHIBIT B

**RISE DEVELOPMENT PARTNERS LLC**
**Financial Projection**

|  | PROJECTED AUGUST 2024 |
|---|---:|
| REVENUE | $5,240,780 |
| *Expected Revenue from Active Projects:* | |
|    132& 134 Waverly Avenue | |
|    566 Grand Street SPE | |
|    103 Grand Street | |
| | |
| TOOLS AND VEHICLES * | $10,000 |
| | |
| LESS COSTS | ($4,930,530) |
| *Payments to Subcontractors under Article 3A* | |
| *Costs for Material and Supplies* | |
| | |
| AVAILABLE CASH FOR DISTRIBUTION | $320,250 |
| | |
| PAYMENTS TO CREDITORS | |
| | |
| Allowed Secured Claim (SBA) | ($162,978) |
| | |
| Allowed Administrative Claims (Professionals) | ($141,656) |
| *Approximate & continuing to accrue; subject to Court Order* | |
| | |
| Allowed Priority Tax Claims | ($1,030) ** |
| | |
| **Available for Distribution to Allowed General Unsecured Claims** | **$14,586** |

**Allowed General Unsecured Claims**
*TBD pro rata after any rejection damages claims, deficiency claims, claims*

Note

The funds available for distribution to Class 4 Claims may vary as they are dependent upon (a) final Allowed Claims that are higher in priority than Class 4 (including Administrative Expense Claims and any reserves for additional post-confirmation administrative costs and fees), (b) any additional funds that are received by the Debtor's estate as set forth in footnote 3, and (c) claim objections.

\* Miscellaneous used tools, used Ford van and trailer; market cash value of $10,000 infused by the principal of the Debtor.

\*\* Excludes disputed priority tax claim of the IRS in the amount of $2,538.99.

## EXHIBIT C

| Type | Counterparty | Description | Assume or Reject |
|---|---|---|---|
| Contract | 73 Gold Street, LLC<br>166 Beard Street<br>Brooklyn NY 11231 | Construction Contract<br>Active Project:<br>103 Grand Street<br>Brooklyn NY 11249 | Assume |
| Contract | 132 Waverly Ave SPE LLC<br>c/o Tuttle Yick LLP<br>352 Seventh Avenue, 14th Floor<br>New York, New York 10001<br>Attn: Alexander Tuttle, Esq. | Construction Contract<br>Active Project:<br>132 & 134 Waverly Avenue<br>Brooklyn NY 11205 | Assume |
| Contract | 566 Grand Street SPE LLC<br>c/o Tuttle Yick LLP<br>352 Seventh Avenue, 14th Floor<br>New York, New York 10001<br>Attn: Alexander Tuttle, Esq. | Construction Contract<br>Active Project:<br>566 Grand Street SPE<br>Brooklyn, New York 11211 | Assume |
| Contract | Dato A/C Inc.<br>444 Coney Island Avenue<br>Brooklyn, NY 11218 | Construction Contract | Assume |
| Contract | Empire State Elec. Co.<br>444 Coney Island Avenue<br>Brooklyn, NY 11218 | Construction Contract | Assume |
| Contract | Kishan Plumbing & Heating<br>106-46 Guy R.Brewer Blvd.<br>Jamaica, NY 11433 | Construction Contract | Assume |
| Contract | S&Q Elevator Inc.<br>138 East Broadway<br>New York, NY 10002 | Construction Contract | Assume |
| Contract | Syed Contractors Corp<br>273 Hunter Avenue<br>Staten Island, NY 10306 | Construction Contract | Assume |
| Contract | YM Pro Corp/Prograde<br>150 Bay 17th Street<br>Brooklyn, NY 11214 | Construction Contract | Assume |

Note

Regarding executory contracts listed herein to be assumed by the Debtor, in the exercise of the Debtor's reasonable business judgment, the Debtor has elected to assume each such contract because: (i) such contract is profitable and in the final stages of completion, (ii) all obligations are current under each contract, (iii) Debtor has the ability to complete the contracts in a timely and efficient manner, and (iv) completing the same will allow the Debtor to obtain the funds with which to fund the obligations under the Plan.

## **EXHIBIT C**

| Type | Counterparty | Description | Assume or Reject |
|---|---|---|---|
| Contract | M&R Constr. Grp., Inc.<br>Attn: James McEnerney<br>144 McClean Ave.<br>Staten Island, NY 10305 | Construction Contract (Disputed) | Reject |
| Equipment Lease | De Lage Landen Fin. Svcs.<br>Lease Processing Center<br>1111Old Eagle Road<br>Wayne, PA 19087 | Equipment Lease<br>Copier System<br>Make: Konica Minolta,<br>Model #: BIZHUB C558 | Reject |
| Equipment Lease | HYG Financial Services, Inc.<br>5000 Riverside Drive, Suite 300 East<br>Irving, Texas 75039-4384<br><br>c/o Wells Fargo Vendor Fin. Svcs., LLC<br>Attn.: Kimberly Park<br>800 Walnut Street<br>Des Moines, IA 50309 | Equipment Lease<br>2020 Yale Forklift GP060MX | Reject |
| Vehicle Lease | Chrysler Capital<br>PO Box 660647<br>Dallas, TX 75266-0647 | Vehicle Lease - 2021<br>Jeep/Subb VIN *2609 | Reject |
| Vehicle Lease | Chrysler Capital<br>PO Box 660647<br>Dallas, TX 75266-0647 | Vehicle Lease - 2021<br>Ram Truck VIN *2723 | Reject |
| Vehicle Lease | Chrysler Capital<br>PO Box 660647<br>Dallas, TX 75266-0647 | Vehicle Lease - 2021<br>Jeep/Subb VIN *5122 | Reject |
| Vehicle Lease | Chrysler Capital<br>PO Box 660647<br>Dallas, TX 75266-0647 | Vehicle Lease - 2021<br>Jeep/Subb VIN *5312 | Reject |
| Vehicle Lease | Lexus Financial Services<br>PO Box 4102<br>Carol Stream, IL 60197-4102 | Vehicle Lease - 2022<br>Lexus RX 350L VIN *1202 | Reject |

Note

Regarding contracts and/or equipment or vehicle leases listed herein to be rejected by the Debtor, in the exercise of the Debtor's reasonable business judgment, the Debtor has elected to reject each such contract and/or lease as the contract or lease is burdensome, unprofitable and/or of inconsequential value or no benefit remains to the Debtor's estate.